305 S.W.3d 258 (2009)
Ex parte S.C.
No. 14-08-00381-CV.
Court of Appeals of Texas, Houston (14th Dist.).
December 8, 2009.
*259 Ann Hartley, Austin, for appellant.
Brad Beers, Houston, for appellee.
Panel consists of Justices SEYMORE, BROWN, and BOYCE.

OPINION
CHARLES W. SEYMORE, Justice.
Appellant, Texas State Securities Board ("the Board"), appeals from an expunction order concerning files and records relating to appellee, S.C. In its sole issue, the Board contends the order is broader than authorized by the statute governing expunction. Because we agree, we modify the order and affirm as modified.

I. BACKGROUND
After an investigation by the Board and referral to the Harris County District Attorney, S.C. was indicted for securities fraud and engaging in organized criminal activity to commit theft. The district attorney subsequently dismissed the charges. S.C. filed a petition seeking expunction of "all files and records relating to the arrest and investigation" maintained by several governmental agencies, including the Board.[1] In its answer, the Board asserted S.C. was entitled to expunction of all files and records relating to the arrest but not its investigation.
S.C.'s claim was resolved by agreed order or nonsuit relative to files and records of all agencies except the Board. The court severed the action pertaining to the Board's files and records from the remainder of the suit. On April 25, 2008, following a hearing, the trial court signed an "Order of Expunction" governing the Board's files and records, despite the Board's objection to the scope of the proposed *260 order. The Board appeals from the order.

II. ISSUES AND STANDARD OF REVIEW
Chapter 55 of the Texas Code of Criminal Procedure governs expunction of criminal records. Tex.Code Crim. Proc. Ann. arts. 55.01-.06 (Vernon 2006 & Supp. 2009). Article 55.01, entitled "Right to Expunction," prescribes the circumstances under which a person who was arrested for a felony or misdemeanor "is entitled to have all records and files relating to the arrest expunged." Id. art. 55.01. With respect to the present case, a person is entitled to expunction if the indictment for a felony has been dismissed and certain other conditions are satisfied. Id. art. 55.01(a)(2).
Expunction is neither a constitutional nor common-law right, but a statutory privilege. Tex. Dep't of Pub. Safety v. J.H.J., 274 S.W.3d 803, 806 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Although the expunction statute is located in the Texas Code of Criminal Procedure, an expunction proceeding is civil rather than criminal in nature. Id. Therefore, the petitioner bears the burden to prove all statutory requirements have been satisfied. Id. A person's entitlement to expunction arises only after all statutory conditions have been met. Id. The trial court has no equitable power to extend the protections of the expunction statute beyond its stated provisions. Id.
The Board does not dispute that S.C. met the requirements for expunction. However, the Board contends the order was broader than authorized by the statute.
The pertinent portions of the order state:
It is ordered that Petitioner is entitled to the complete expunction of all files and records related to the arrest of Petitioner:.[sic]
. . .
Without limiting the scope of this order, the expunction shall include all files and records which mention petitioner by name or which refer to petitioner.
Without limiting the scope of this order, the expunction shall include all files and records generated by or received by the Texas State Securities Board and its counsel, including counsel for its current or former employees, during this expunction proceeding, including all copies of all pleadings and discovery.
The Board does not challenge the first above-cited provision because it tracks the language of the statute. See Tex.Code Crim. Proc. Ann. art. 55.01(a). However, the Board challenges the two provisions that follow, contending they require expunction of more than "the records and files relating to [S.C.'s] arrest."[2]
The Board does not object to expunction of S.C.'s "mug shots, finger prints, warrants, rap sheets, criminal charges, arraignment records, dismissal of criminal charges," and the Board's investigative files and records that reference the arrest. However, the Board objects to wholesale expunction of its files and records pertaining to its investigation of S.C., arguing such relief is not authorized by the statute. In contrast, S.C. contends he is entitled to expunction of all these investigative files and records as "relating to the arrest."
Initially, we agree that the challenged provisions, as currently worded, are clearly *261 too broad to satisfy the statute because, even if S.C. were entitled to expunction of all the investigative files and records, these provisions are not even limited to his case. With respect to the first such provision, the Board could possess documents mentioning S.C. if, for example, he were a witness in a matter unrelated to his case. Further, as the Board asserts, the second challenged provision encompasses its files on all its other cases and its "Christmas cards."
We recognize the trial court must not have intended to enter such a broad order. The trial court likely intended to require expunction of all files and records pertaining to the Board's investigation of S.C. considering that is the disputed issue, S.C. submitted the order signed by the court, and these provisions would encompass such relief if limited accordingly. In other words, the challenged provisions were likely intended to define "files and records related to the arrest" to include all files and records pertaining to the Board's investigation of S.C. Therefore, rather than simply deleting the challenged provisions, we will decide if S.C. is entitled to expunction of all these investigative files and records and the challenged provisions should be narrowed to, at least, afford such relief.[3]
We note also that the parties disagree regarding the applicable standard of review. The Board acknowledges a court's decision whether to grant an expunction is reviewed for abuse of discretion. See Heine v. Tex. Dep't of Pub. Safety, 92 S.W.3d 642, 646 (Tex.App.-Austin 2002, pet. denied). However, as the Board asserts, we are not addressing whether S.C. was entitled to expunction, but whether the order exceeded the scope of expunction allowed by the statute, and construction of a statute is a question of law, which we review de novo. F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 683 (Tex.2007).
S.C. contends we must nonetheless apply an abuse-of-discretion standard because the trial court reviewed the files and records referenced in the challenged provisions and made a fact finding that they related to S.C.'s arrest; thus, we must uphold the order because it was based on "solid evidence." See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex.2002) (recognizing a trial court does not abuse its discretion if some evidence reasonably supports its decision). We disagree.
The trial court held a hearing at which it entertained the Board's objection to the scope of the proposed order. During the hearing, the parties stipulated to the facts necessary to establish S.C.'s right to expunction, but no evidence was admitted regarding the scope of the expunction. Further, there was no request for, and the trial court did not render, findings of fact concerning the files and records to be expunged.[4] *262 We may not uphold the challenged provisions based on any implied finding that the files and records mentioned therein related to S.C.'s arrest because there was no evidence admitted to support such a finding. See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex.2002) (stating that, when trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied).
Moreover, it is apparently undisputed the Board possesses files and records pertaining to its investigation of S.C. that do not specifically reference the arrest. Consequently, whether these investigative files and records nonetheless constitute "files and records relating to the arrest" under the expunction statute is solely a legal issuenot a fact issue on which the trial court could have rendered any findings. Accordingly, we will employ a de novo standard to review this issue. See Tex. Educ. Agency v. T.F.G., 295 S.W.3d 398, 400-01 (Tex.App.-Beaumont 2009, no pet. h.) (rejecting petitioner's argument that abuse-of-discretion standard applied to agency's challenge to expunction order and employing de novo standard because court was not addressing petitioner's right to expunction but whether order exceeded scope of statute with respect to records expunged).[5]

III. ANALYSIS
When construing a statute, we ascertain and give effect to the legislature's intent as expressed by "the plain and common meaning of the statute's words." HCBeck, Ltd. v. Rice, 284 S.W.3d 349, 352 (Tex.2009); Duenez, 237 S.W.3d at 683. We may also consider, among other matters, the objective the legislature sought to attain, circumstances under which the statute was enacted, legislative history, common law, consequences of a particular construction, and the title of the statute. Tex. Gov't Code Ann. § 311.023 (Vernon 2005); see Rice, 284 S.W.3d at 352; see also Harris County Dist. Attorney's Office v. J.T.S., 807 S.W.2d 572, 573 (Tex.1991) (recognizing Code Construction Act controlled when interpreting expunction statute). We presume every word of a statute was used for a purpose and, likewise, every word excluded from a statute was excluded for a purpose. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.1981). We must consider the statute as a whole rather than isolated provisions. Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex.2001).
*263 We conclude that S.C. is not entitled to expunction of all the Board's files and records pertaining to its investigation of S.C. based on the language of article 55.01, the legislative intent in enacting the expunction statute, other provisions of the statute, its title, the illogical consequence of adopting the opposite construction, and the few cases providing guidance on the scope of expunction.[6]

A. Language of article 55.01
Article 55.01 provides only that a petitioner may obtain expunction of "files and records relating to the arrest." Tex.Code Crim. Proc. Ann. art. 55.01(a). The Code of Criminal Procedure does not define "relating to the arrest." However, considering the plain and common meaning of this phrase, we do not construe the statute to encompass investigative files and records that existed prior to, and independent of, the ultimate arrest. See Tex.Code Crim. Proc. Ann. art. 3.01 (Vernon 2005) (providing, "terms used in the Code are to be taken and understood in their usual acceptation in common language, except where specially defined").
It is axiomatic that an arrest may follow an investigation into possible criminal conduct, such as the investigation conducted by the Board. See 7 Tex. Admin. Code § 127.1 (providing that certain personnel of State Securities Board may sign complaints before appropriate district or county attorneys where there is sufficient evidence of a violation of penal provisions of the Securities Act.). However, article 55.01 does not also state that a person may obtain expunction of records "relating to the investigation" or "resulting in" or "contributing to" the arrest, using these or similar terms. Tex.Code Crim. Proc. Ann. art. 55.01(a). We presume that, if the Legislature had intended to allow expunction of these investigative files and records, it would have so specified. Accordingly, we decline to expand the scope of the statute beyond the meaning expressed therein.

B. Legislative intent
Our construction of the statute is consistent with the legislature's intent. The Texas Supreme Court, our court, and sister courts have recognized that the statute was enacted to enable a person who is wrongfully arrested to expunge his arrest record. See, e.g., J.T.S., 807 S.W.2d at 574; Carson v. State, 65 S.W.3d 774, 785 (Tex.App.-Fort Worth 2001, no pet.); Wilkomirski v. Tex. Criminal Info. Ctr., 845 S.W.2d 424, 426 (Tex.App.-Houston [1st Dist.] 1992, no writ); State v. Knight, 813 S.W.2d 210, 212 (Tex.App.-Houston [14th Dist.] 1991, no writ); Smith v. Millsap, 702 S.W.2d 741, 742 (Tex.App.-San Antonio 1985, no writ); Tex. Dep't of Pub. Safety v. Failla, 619 S.W.2d 215, 217 (Tex.Civ.App.-Texarkana 1981, no writ).
More specifically, the statute was enacted to prevent the record of a wrongful arrest from negatively impacting a person for the remainder of his life. See State v. Arellano, 801 S.W.2d 128, 131-32 (Tex.App.-San Antonio 1990, no writ). The Arellano court recited various presentations in the legislature by the sponsors or supporters of the bills that resulted in passage of the expunction statute, including the following statements:

*264 If you've been arrested and you've got an arrest record, and no circumstances exist, there is no reason at all in a just society why you should be penalized for the rest of your life for the existence of that record.
It's almost unthinkable to me that in Texas in 1977 that we still have thousands of people who've been arrested by a mistake, by accident, in cases in which there were no charges to be filed ultimately but their records reflect for the rest of their lives a charge which was filed against them and they go through life with a felony.
Id. at 131. A sponsor also presented a witness who explained that the existence of his son's arrest record arose when he was asked on military and law school applications whether he had ever been arrested, although the charge had been dismissed. Id. at 132. Relying on this legislative history, the Arellano court concluded it was "abundantly clear that the legislative intent in passing the statute was to cure the evils attendant to wrongful arrests and subsequent indictments." Id. S.C. cites no authority indicating the legislature also intended to allow a person to eradicate any evidence he had ever been subject to a governmental investigation or was concerned that being the subject of such an investigation imposes a life-long stigma.

C. Other provisions of the expunction statute and its title
Another portion of the expunction statute supports our conclusion. Specifically, article 55.03, entitled "Effect of Expunction," provides that, subject to a certain exception, when an expunction order is final, "the person arrested may deny the occurrence of the arrest and the existence of the expunction order." Tex.Code Crim. Proc. Ann. art. 55.03. This article does not authorize the person also to deny occurrence of the investigation that lead to the arrest. See id.
Moreover, the title of the statute is "Expunction of Criminal Records." We have not found a definition of "criminal records" in the Code of Criminal Procedure. Nonetheless, applying the plain meaning of the term, in the context of the expunction statute, we do not construe it to entail records created merely in the course of investigating possible criminal conduct before formal institution of criminal proceedings, such as by arrest or indictment.
To support his position that article 55.01 authorizes expunction of all investigative files and records, S.C. cites several portions of the expunction statute effectively providing as follows: expunction based on non-presentment, dismissal, or quashing of an indictment is allowed only if the limitations period expired before the petition was filed; see id. art. 55.01(a)(2)(A)(i); expunction based on an acquittal is not allowed if the petitioner was convicted of, or remains subject to prosecution for, another offense arising out of the same criminal episode; see id. art. 55.01(c); if "the person who is the subject of an expunction order is still subject to conviction for an offense arising out of the transaction for which the person was arrested because the statute of limitations has not run and there is reasonable cause to believe that the state may proceed against the person for the offense, the court may provide in its order that the law enforcement agency and the prosecuting attorney responsible for investigating the offense may retain any records and files that are necessary to the investigation"; see id. art. 55.02 § 4(a); and in an expunction order which was based on acquittal of the petitioner, the court may provide that the law enforcement agency and the prosecuting attorney retain records and files if (1) they are necessary to conduct a subsequent investigation *265 and prosecution of another person or (2) the state establishes the records and files are necessary for use in another criminal case or a civil case; see id. art. 55.02 § (4)(a)(1), (2).
According to S.C., the legislature would not have included the above-cited provisions if it intended the scope of expunction to be as limited as urged by the Board because items such as a petitioner's mug shot, fingerprint card, rap sheet, and indictment would have no relevance to a future prosecution of the petitioner, another person, or a civil action; rather, these provisions reflect that expunction includes investigative records because they are the only type of records that would be pertinent to such future prosecutions. We disagree.
It is not unreasonable that the legislature intended to ensure a record remains showing a person was previously arrested for an offense while he remains subject to prosecution for the offense or another offense arising out of the same criminal episode. Moreover, the petitioner's fingerprints might be useful in the prosecution of another person to exclude the petitioner as the perpetrator of that offense; or information regarding the petitioner's arrest might be needed if he were to assert a civil rights action based on the circumstances of the arrest. We need not outline every conceivable instance in which arrest records might be relevant in a future criminal prosecution or civil case. We simply cite these examples to negate S.C. position that only investigative recordsnot arrest recordswould ever be relevant in a future criminal prosecution or civil case.

D. Illogical consequences of the opposite construction
The illogical consequence of adopting the construction urged by S.C. also supports our conclusion. Only a person who was arrested may obtain expunction of his records because "[a]n arrest is a threshold requirement under the expunction statute." Carson, 65 S.W.3d at 779; Harris County Dist. Attorney v. Lacafta, 965 S.W.2d 568, 570 (Tex.App.-Houston [14th Dist.] 1997, no pet.); see Tex.Code Crim. Proc. Ann. art. 55.01. Therefore, under S.C.'s reasoning, a person who was eventually arrested may obtain expunction of records of the investigation whereas a person who was investigated but not arrested has no such right. We cannot conclude the legislature intended to afford greater rights to a person who was arrested than to one who was not arrested.

E. Cases discussing the scope of expunction
Although the parties cite, and we have found, few cases discussing the scope of expunction authorized under the statute, several decisions support our conclusion that not all of the Board's investigative files and records pertaining to S.C. are necessarily subject to expunction.
For instance, in S.P. v. Dallas County Child Welfare Unit of the Texas Department of Human Resources, the trial court ordered expunction of records maintained by various agencies relating to the petitioner's arrest for child abuse but excluded records of the respondent child welfare unit because it was not an agency "directly involved in criminal matters." 577 S.W.2d 385, 386-87 (Tex.Civ.App.-Eastland 1979, writ ref'd n.r.e.). On appeal, the court held that the unit's "records and files relating to the arrest" were subject to expunction. Id. at 388. However, the court noted that the "investigations and written reports" rendered pursuant to the Family Code provision authorizing the unit to investigate child-abuse allegations were not subject to expunction "except for any references in such reports which are based *266 upon police records and files relating to the arrest." Id.
Similarly, in Carson, the respondent city argued that none of its records concerning the offense for which the petitioner was acquitted were subject to expunction because they were maintained in the city's capacity as his former employernot as a state agency. 65 S.W.3d at 777, 784. Although the court refused to exclude the city's records in toto from expunction, it remarked that the city was not precluded on remand from attempting to show some records were beyond the scope of expunction. Id. at 785. Significantly, the court stated:
The obvious objective of the expunction statute is to remove from public access and from access by the officials and agencies named in the order all evidence of a petitioner's arrest and the charges made against him. This evidence consists generally of the indictment and the photographs, fingerprints, and other matters comprising the arrest record and records relating to the expunction proceeding. To the extent [the city] possess records other than these types of records, they are not subject to expunction.
Id. (citing W.V. v. State, 669 S.W.2d 376, 378 (Tex.App.-Dallas 1984, writ ref'd n.r.e.), in which the court recited above-items constituting the arrest record and the indictment as subject to expunction and then decided records relating to the expunction proceeding were also subject to expunction); see City of Fort Worth v. D.T., 165 S.W.3d 425, 429 n. 5 (Tex.App.-Fort Worth 2005, no writ) (citing Carson when reciting same list of items as subject to expunction but not addressing whether the agency at issue's records were subject to expunction order because it lacked standing to challenge the order).[7]
Accordingly, S.P. and Carson support a conclusion that the legislature's intent in enacting the expunction statute was not to eradicate all evidence of the conduct underlying the expunged arrest. See Carson, 65 S.W.3d at 785; S.P., 577 S.W.2d at 388; see also Bustamante v. Bexar County Sheriff's Civil Serv. Comm'n, 27 S.W.3d 50, 51-54 (Tex.App.-San Antonio 2000, pet. denied) (rejecting appellant's argument that expunction of records relating to her arrest for drug possession barred findings supporting termination of her employment with sheriff's department on same grounds; civil service commission upholding *267 the termination did not rely on expunged records, but instead on "events surrounding the arrest," particularly other officers' testimony about their personal observations of drugs at appellant's home and her conduct during their investigation).
After the parties filed their briefs, a sister court considered the scope of the expunction statute. In Texas Education Agency v. T.F.G., following the petitioner's acquittal for indecency with a child, the trial court granted expunction of "records pertaining to [petitioner]" possessed by certain agencies including Texas Education Agency ("TEA"). 295 S.W.3d at 399-401. TEA, which evaluates applications for teaching certificates, opposed expunction of its records, claiming the petitioner's underlying conduct might result in sanctions with respect to his educator certification. See id.
TEA agreed any reference to the petitioner's arrest should be expunged but argued that its records regarding the alleged incident and the petitioner's underlying conduct were excluded from expunction because the legislature's intent was "not to wipe agencies' files clean of any information about a person whose arrest records alone are expunged." Id. at 401. In contrast, the petitioner argued the statute's purpose is to "provide those who have been acquitted with a `fresh start' from allegations of wrongdoing," and any documents "memorializing the events leading to the charge are included within the ambit of documents `related to the arrest.'" Id. at 401. After analyzing S.P. and Carson, the court of appeals held:
It is certainly possible that TEA may have documents or files which pertain to [petitioner], and the allegations made against him, separate and apart from the records and files relating to the criminal investigation, arrest, and prosecution of [petitioner] for the offense. . . . Based on our reading of the plain language of the statute, we believe the statute's intent is not to erase all evidence of the underlying conduct, but to expunge any evidence of the criminal investigation, subsequent arrest and prosecution for that conduct. This interpretation is in line with our fellow courts of appeals' application of this statute, as set forth above. We conclude that only documents and records that pertain to the criminal investigation, arrest, and prosecution of [petitioner], can be said to "relate to the arrest." Any other documents resulting from TEA's internal investigation are not subject to expunction, except for references in any such documents that are based on the criminal investigation and subsequent arrest of [petitioner].
Id. at 403 (citations omitted).
In post-submission briefing, the Board claims that T.F.G. supports its position because the court refused to allow expunction of all TEA's records pertaining to the petitioner. See id. In contrast, S.C. contends the situation in T.F.G. is distinguishable from the present case and actually supports his position. As S.C. suggests, unlike the present case, TEA apparently did not conduct the investigation leading to the petitioner's arrest; instead, it possessed information obtained during its own investigation to determine whether he should retain his educator certificate. See id. at 399-403. The court seemed to rely on this distinction when holding that files and records relating to the "criminal investigation" were subject to expunction but files and records from TEA's own investigation were not. See id. at 402-03. Although not exactly clear, the court apparently used the term "criminal investigation" to mean a investigation that results in a petitioner's arrest. See id. S.C. *268 emphasizes the court's inclusion of files and records relating to the "criminal investigation" within the scope of expunction.
We agree the court's decision was "in line" with Carson and S.P. to the extent it recognized an agency may possess documents related to the petitioner and the underlying offense that are not subject to expunction and specifically held TEA's records were not subject to expunction. See id. at 401-03. However, we disagree with the court's injecting files and records relating to the "criminal investigation" into the scope of expunction. See id. at 402-03. The court did not conduct any analysis to demonstrate the statute authorizes such relief. See id. at 399-403. For the reasons discussed above, we conclude its opinion regarding expunction of files and records pertaining to the "criminal investigation" does not comport with the statute, and we decline to follow this portion of the opinion.
Further, S.P. and Carson do not support the T.F.G. court's inclusion of files and records pertaining to the "criminal investigation" within the scope of expunction. Like T.F.G., in Carson, the respondent city apparently did not participate in the investigation leading to the petitioner's arrest but possessed information about the underlying offense in his personnel records. See Carson, 65 S.W.3d at 777, 784. Nevertheless, when reciting the items typically subject to expunction, the court did not include any sort of investigative files and records. See id. at 785. In S.P., the child welfare unit opposed expunction of its records relating to the petitioner's arrest because it was prosecuting a suit for termination of his parental rights; however, it is unclear whether the unit participated in the investigation that lead to his arrest. See generally, S.P., 577 S.W.2d 385. Regardless, when specifically excluding the unit's investigative files and records from expunction, the court did not distinguish an investigation that led to the arrest from one pursued for some other purpose. See id. at 388.[8] Likewise, when concluding the statute does not necessarily encompass expunction of investigative files and records, we find no distinction between an investigation resulting in the petitioner's arrest and an investigation pursued for some other purpose; the same underlying conduct is the focus of both investigations.
In fact, a federal court cited S.P. when holding the Connecticut "criminal erasure statute," which effectively requires expunction of records and information "pertaining to [a dismissed] charge," did not prohibit disclosure of police records and "byproducts" of its "criminal investigation" of the underlying offense that existed prior to the erased charge. See Penfield v. Venuti, 93 F.R.D. 364, 366-69 (D.Conn.1981). Although not a Texas case, we cite this decision because the court's reasoning is consistent with our analysis of the Texas statute. Among other factors, the court based its decision on the following: the plain language of the statute, particularly the operative words, "pertaining to [the] charge"; legislative history showing the statute was enacted to remove the stigma of arrest or formal charges from a person who has not committed a crime; and the *269 fact that investigative evidence would have existed notwithstanding the criminal prosecution and should not be protected from disclosure merely because the defendant's conduct prompted an attempted prosecution. See id. at 367-69.

IV. CONCLUSION
In sum, we cannot uphold the two challenged provisions in any form because S.C.'s entitlement to expunction of "all records and files relating to the arrest" does not include all the Board's files and records pertaining to its investigation of S.C.[9] Accordingly, we sustain the Board's sole issue.
We modify the "Order of Expunction" to delete the following provisions:
Without limiting the scope of this order, the expunction shall include all files and records which mention petitioner by name or which refer to petitioner.
Without limiting the scope of this order, the expunction shall include all files and records generated by or received by the Texas State Securities Board and its counsel, including counsel for its current or former employees, during this expunction proceeding, including all copies of all pleadings and discovery.
We affirm the "Order of Expunction" as modified.[10]
NOTES
[1] In the introductory portion of his petition, S.C. requested expunction of "all records and files relating to his arrest and prosecution." However, in his prayer for relief, he requested expunction of "all files and records relating to the arrest and investigation."
[2] Throughout this opinion, we will refer to the first provision of the above-cited portion of the order as "the unchallenged provision" and the two following provisions as "the challenged provisions."
[3] We note that, on its face, the intended scope of the order is not exactly clear. The unchallenged provision ends with both a colon and a period. Thus, it is unclear whether the challenged provisions that follow are merely encompassed within the unchallenged provision, i.e. implicitly qualified with the language "related to the arrest"; or whether the challenged provisions expand on the unchallenged provision by defining certain files and records as "related to the arrest." However, narrowly construing the challenged provisions as merely encompassed within the unchallenged provision would not resolve the issue in this case; all parties agree S.C. is entitled to expunction of files and records "related to the arrest," and the dispute concerns whether this right includes all files and records pertaining to the Board's investigation of S.C. Therefore, we glean that the challenged provisions were intended to expand on the unchallenged provision and define "files and records related to the arrest" to include these investigative files and records.
[4] In its order, the trial court found S.C. was entitled to expunction and jurisdiction and venue were proper. The court also recited findings concerning S.C.'s identification, arrest date, and the offenses charged, which he was required to set forth in his petition. See Tex.Code Crim. Proc. Ann. art. 55.02(2)(b).
[5] When asserting the trial court heard evidence, S.C. refers to deposition testimony of a Board employee that S.C. presented in response to a motion for summary judgment filed by the Board, on which the trial court apparently did not rule. The employee agreed the files and records that the Board submitted to the district attorney "had to do ultimately with the arrest of [S.C.]." However, this testimony was not admitted at the hearing on the petition for expunction. On appeal from a trial on the merits, we cannot consider summary-judgment evidence that was not admitted in evidence at trial. Celadon Trucking Servs., Inc. v. Titan Textile Co., 130 S.W.3d 301, 307 (Tex.App.-Houston [14th Dist.] 2004, pet. denied); Noble Exploration, Inc. v. Nixon Drilling Co., 794 S.W.2d 589, 592 (Tex.App.-Austin 1990, no writ). Further, evidence the Board's files and records "had to do ultimately with the arrest of [S.C.]" would not resolve the legal issue of whether the records that do not specifically reference the arrest are nonetheless encompassed under the statutory language, "relating to the arrest."
[6] The Board also argues that, if we adopt S.C.'s and the trial court's interpretation of the statute, the Board's ability under the securities act to share its information with other agencies will be compromised, the confidentiality of its records will be violated, and witnesses who cooperate in its investigations face potential retaliation because expunged records may be returned to the petitioner. Because we agree with the Board's construction of the statute based on the factors we cite above, we need not address these arguments.
[7] S.C. argues that the Carson court's statement was dicta. See Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., 217 S.W.3d 653, 662 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("Dictum is an observation or remark made concerning some rule, principle, or application of law suggested in a particular case, which observation or remark is not necessary to the determination of the case."). We acknowledge that, in Carson, as well as S.P., the scope of expunction was not directly stated as the issue. See generally Carson, 65 S.W.3d 774; S.P., 577 S.W.2d 385. However, we do not necessarily characterize the courts' pertinent statements as dicta because each court's holding that the agency's records were not automatically excluded from expunction encompassed an opinion that some of its records may not be subject to expunction. See Carson, 65 S.W.3d at 785; S.P., 577 S.W.2d at 388. Further, these opinions factored into the ultimate relief granted by each court: when remanding, the Carson court stated the agency could contest that certain records were subject to such an order; see 65 S.W.3d at 785; and the S.P. court actually modified the trial court's order to exclude specifically the investigative records from expunction in accordance with its opinion. 577 S.W.2d at 388. Nevertheless, even if the Carson and S.P. statements were dicta, they, at least, indicate that other courts have construed the expunction statute in the same manner as we have. Moreover, the Carson court cited W.V. which directly addressed the extent to which items were subject to an expunction order. See Carson, 65 S.W.3d at 785; W.V., 669 S.W.2d at 377-79.
[8] In fact, the trial court referred to records obtained under a Family Code provision that required the agency to investigate, and report on, child-abuse allegations to determine whether grounds existed for a suit affecting the parent-child relationship, but also to report its findings to the district attorney or other appropriate law enforcement agency. See Act of May 25, 1973, 63th Leg., R.S., ch. 543, § 34.05, 1973 Tex. Gen. Laws 1411, 1455, amended by Act of June 2, 1975, 64th Leg., R.S., ch. 476, § 53, 1975 Tex. Gen. Laws 1253, 1272 (current version at Tex. Fam.Code Ann. §§ 261.301-.308 (Vernon 2008 & Supp. 2009)).
[9] As noted, the S.P. court concluded investigative files and records that reference the petitioner's arrest are subject to expunction. See 577 S.W.2d at 388. We need not decide whether the S.P. court's conclusion was correct because, for purposes of the order in this case, the Board concedes they are included within the provision requiring expunction of "files and records relating to the arrest."
[10] The Board also seems to challenge the following portion of the order: "It is further ordered that the Texas State Securities Board shall delete from its public records all index references to the records and files that are subject to the expunction order." However, the Board challenges this language only because it requires deletion of index references to records that are not properly included within the scope of expunction. Because we limit the scope of the order, any complaint regarding this provision is now moot.